IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT B. ODOM, )<br>SUPERIOR TIRE & AUTO CARE, and )<br>SUPERIOR AUTO CARE a/k/a )<br>SUPERIOR AUTO CARE OF EASLEY, )<br>)<br>Defendants. )<br>)  | Civil Action No. _____ |

**VERIFIED COMPLAINT AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, for its Verified Complaint and Motion for Preliminary Injunction against Defendants Robert B. Odom, Superior Tire & Auto Care, Superior Auto Care a/k/a Superior Auto Care of Easley (collectively, the "Defendants") alleges as follows:

**THE PARTIES**

1.     Plaintiff Meineke Car Care Centers, LLC ("Meineke") is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business located at 440 S. Church Street, Suite 700, Charlotte, North Carolina.

2.     Upon information and belief, Defendant Robert B. Odom ("Odom"), is a citizen and resident of the State of South Carolina, with a home address of 144 Brook Meadow Lane, Liberty, South Carolina 29671.

3.     Upon information and belief, Defendant Superior Tire & Auto Care ("Superior Tire") is a sole proprietorship existing under the laws of the State of South Carolina, with a

business address of 5108 Calhoun Memorial Highway, Easley, South Carolina 29640. Upon information and belief, Odom owns and operates Superior Tire.

4. Upon information and belief, Defendant Superior Auto Care a/k/a Superior Auto Care of Easley ("Superior Auto") is a sole proprietorship existing under the laws of the State of South Carolina, with a business address of 410 Ross Avenue, Easley, South Carolina 29640, and a website at www.superiorautocareofeasley.com. Upon information and belief, Odom owns and operates Superior Auto.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), as the claims against Defendants arise under the Lanham Act.

6. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the laws of the United States.

7. This Court has jurisdiction over related state law claims in accordance with 28 U.S.C. § 1338(b).

8. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b)(1), in that Defendants reside in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims in this action occurred here.

9. Odom is subject to personal jurisdiction in South Carolina because he is a resident of Pickens County, South Carolina, and because he conducts substantial business in this federal judicial district and has sufficient minimum contacts with this district

10.     Superior Tire is subject to personal jurisdiction in South Carolina because it conducts substantial business in this federal judicial district and has sufficient minimum contacts with this district.

11.     Superior Auto is subject to personal jurisdiction in South Carolina because it conducts substantial business in this federal judicial district and has sufficient minimum contacts with this district.

## GENERAL ALLEGATIONS

### The Nature of Meineke's Business

12.     Meineke grants franchises to qualified persons to establish and operate automotive repair centers under a standard, unique and uniform system developed by Meineke, and grants to those persons the right to use Meineke's federally-registered trade name, logo and other proprietary marks (collectively, "Meineke's Marks").

13.     Meineke has over 800 franchises located throughout the United States and parts of Canada.

### Meineke Trade Name, Logo and Service Marks

14.     Meineke is the owner of the trade name "Meineke" and various service marks. The Meineke name and all of its marks and logos are registered with the United States Patent and Trademark Office.

15.     The trade name "Meineke" is currently in use, among other registrations, under registration numbers 1,241,466; 1,207,490; 1,434,915; 1,610,116; 1,620,331; 2,022,824; 1,191,431; 1,207,483; 1,215,262; 1,268,145; 1,268,264; 2,956,651; and 3,017,566.

16.     All of Meineke's proprietary names, logos and marks remain in full force and effect, unrevoked and uncancelled. Meineke has given notice to the public that its name, logo

and marks are registered with the United States Patent and Trademark Office by displaying with the name, logo and marks the letter "R" enclosed within a circle.

17. Since July 1972, hundreds of millions of dollars have been spent to advertise the Meineke name, logo and marks.

18. As a result, the Meineke name, logo and marks have become famous, and are strongly associated in the minds of the consuming public throughout the United States and parts of Canada with the products and services offered by Meineke and its franchised chain of independent automotive repair centers.

19. The Meineke name, logo and marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public and constitute property of the greatest value to Meineke.

20. No goods or services bearing the name "Meineke" were manufactured, distributed or sold to the general public prior to the first use by Meineke and its predecessors in interest.

21. More particularly, since July 1972, all goods and services lawfully manufactured, distributed or sold in the United States under the Meineke name, logo and marks have been manufactured, distributed or sold pursuant to licenses granted by Meineke.

22. Each licensee who manufactures, distributes or sells such goods and services promises and agrees as a condition of the license to strict control and approval by Meineke over the quality of the goods and services offered by the licensee, as well as the quality of advertising in connection with those goods and services.

**Defendants' Violations**

23. This action arises out of the unauthorized use of Meineke's Marks at an automotive repair business in Easley, South Carolina.

24. Until early 2015, one of Meineke's authorized franchises, Meineke Center No. 1988, was being operated at 5108 Calhoun Memorial Highway, Easley, South Carolina 29640 (the "Property"), by previously-authorized franchisees Curtis Tyner, Jr. and Jan Childress Tyner (the "Tyners"). *See* Ex. A, Allen Aff. ¶¶ 2–3.

25. Upon information and belief, on or about January 19, 2015, the Tyners abandoned Meineke Center 1988 and vacated the Property with no intent to reopen. Meineke terminated the Tyners' franchise agreement on or about January 27, 2015.

26. Upon information and belief, in or about January 2015, Defendants entered into a lease agreement with the Property's owner and took possession of the Property, where Meineke Center No. 1988 previously had been operated.

27. Upon information and belief, Odom had previous experience in the auto repair industry as the owner and operator of Superior Auto.

28. Upon information and belief, Odom took possession of the Property with the intent of starting a second automotive repair business and opened Superior Tire at the Property in an effort to grow his existing automotive repair business.

29. From February through April 2015, Meineke and Odom discussed the possibility of Odom going through the approval and training process to become a Meineke franchisee. *Id.* ¶¶ 4–5. On or about February, 25, 2015, Meineke granted the Tyners a limited revocable license, not to exceed 90 days, to operate Meineke Center No. 1988. Odom managed the business while going through the approval and training process to become a

franchisee. *Id.* ¶ 6. While Odom began the franchisee approval process, he failed to complete it. *Id.* ¶ 7.

30. On April 20, 2015, Meineke informed Odom and the Tyners that Meineke would terminate the Tyners' limited revocable license on or after April 28. *Id.* ¶¶ 7–8.

31. On May 14, 2015, Meineke notified the Tyners that their limited revocable license had been terminated, effective May 14, 2015. *Id.* ¶ 9.

32. On May 18, 2015, Meineke sent Odom and Mr. Tyner an email requesting that they "Please let me know when all the Meineke signs have been removed, all the Meineke paraphernalia in the building has been discarded and the phone number, 864-306-9974, discontinued." *Id.* ¶ 10.

33. Although they have never been authorized Meineke franchisees, Defendants have continued to use Meineke's Marks at the Superior Tire store, located at the site of the former Meineke Center No. 1988. *Id.* ¶¶ 11–12, 19; Ex. B, Labuda Aff. ¶ 3; *see also* Labuda Aff. Ex. A, Google street view image dated July 2015.

34. Defendants have also continued to utilize the telephone number for the Meineke Center No. 1988 location that was advertised exclusively in conjunction with Meineke's Marks. Ex. A, Allen Aff. ¶¶ 20–21; *see also* Ex. B, Labuda Aff. ¶ 4.

35. After being notified of Defendants' continued unauthorized use of Meineke's Marks at the former Meineke Center No. 1988 location, Meineke attempted to coordinate the removal of Meineke's Marks, including Meineke signs, from the vacated Meineke Center No. 1988 location. *See* Ex. A, Allen Aff. ¶¶ 11–15.

36. On September 14, 2015, Meineke arranged for a representative from a professional sign company, to remove the Meineke signs. Odom confronted the representative and refused to let him on the property. *Id.* ¶¶ 13–15.

37. Soon after Odom had refused to allow Meineke's representative on the property to remove the signs, Odom sent an email to Meineke stating: "Any and all signage WILL NOT be removed until I say so!" *See* Ex. A, Allen Aff. ¶ 16; Allen Aff. Ex. D, Sept. 14, 2015 Email. Odom sent a subsequent email stating: "Jerry you or your company is NOT allowed on the propert [sic] at this time. Goodbye[.]" Ex. A, Allen Aff. ¶ 17; Allen Aff. Ex. D, Sept. 14, 2015 Email. Odom then sent another email informing Meineke to "[g]et your lawyers and I will see you in court!" Ex. A, Allen Aff. ¶ 18; Allen Aff. Ex. D, Sept. 14, 2015 Email.

### Irreparable Harm Based On Defendants' Infringement

38. Defendants' on-going use of Meineke's Marks in commerce is likely to cause confusion or mistake among the consuming public as to the source, sponsorship, and/or approval of the goods and services offered by Defendants' center and a loss of valuable goodwill to Meineke. Defendants' conduct is also likely to deceive customers.

39. As of September 14, 2015, the distinctive Meineke yellow and black pole sign and other similar signs and marks remained prominently displayed on the premises of the former Meineke Center No. 1988 while Defendants continued to operate a competing business offering automotive repair services. Ex. A, Allen Aff. ¶ 19; Ex. B, Labuda Aff. ¶ 3; *see also* Labuda Aff. Ex. A, Google street view image dated July 2015.

40.     In addition, Defendants continue to utilize the telephone number, (864) 306-9974, that has been advertised in connection with Meineke's Marks.  Ex. A, Allen Aff. ¶¶ 20–21; *see also* Ex. B, Labuda Aff. ¶ 4.

41.     Because Defendants continue to use the Meineke Marks, utilize the telephone number that has been advertised in connection with Meineke's Marks, and operate from the same location as is listed in the Yellow Pages as the former Meineke Center No. 1988, it is likely that customers will blame Meineke for any problems that they experience as a result of Defendants' work on their automobiles, even though Meineke, in fact, has no control over the quality of the products or services now being sold by the Defendants to such customers.

42.     In addition, it is likely that customers will look to Meineke under what they believe is Meineke's warranty for any poor work performed by Defendants' competing business on their automobiles, and for any damage done to their automobiles by Defendants' competing business, despite the fact that Meineke has no control over the quality of the products or services now being sold by the Defendants' center to such customers.

43.     Defendants are not subject to Meineke's uniform procedures, techniques, or quality control standards, and they are operating what would appear to be an authorized Meineke franchise.  Meineke will suffer a loss of goodwill with customers in the Easley and Clemson, South Carolina areas who are being, have been, or may be victimized by the Defendants' business practices.

44.     Defendants' conduct has the potential for repetition and is both deceptive and detrimental to the public interest.

45.     It is likely that it will be impossible, as a practical matter, for Meineke to re-establish its former good reputation with lost customers who have been victimized by

Defendants once those customers have switched to other automobile repair facilities.

46.     In addition to the irreparable harm now being caused to Meineke by Defendants' wrongful conduct, Meineke owes a duty to over 800 franchises throughout the United States and parts of Canada to protect them from this public deception and unfair competition by unauthorized users of the Meineke Marks.

47.     No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its innocent franchisees and with the franchise-buying public in general as a result of Defendants' deception and unfair competition.

48.     Any harm that would result to Defendants from an Order of this Court directing Defendants to cease infringing Meineke's Marks is not sufficient to justify permitting Defendants to continue to deceive and confuse the consuming public generally, and to irreparably harm the rights and interests of Meineke and its existing franchisees.

## FIRST CLAIM
### (Trademark Infringement/Unfair Competition)

49.     Meineke repeats and re-alleges herein paragraphs 1 through 48 above, which are incorporated by reference herein.

50.     Defendants have deliberately and intentionally used Meineke's federally registered name, logo and marks in interstate commerce without Meineke's permission or authority, and are continuing to do so now, despite of and in open defiance of Meineke's demands that they cease such unlawful activity. Defendants also continue to use the Meineke telephone number associated in the Yellow Pages and other advertising with Meineke's Marks at their competing business.

51.     The nature and extent of Defendants' wrongful and unauthorized use of

Meineke's trade name, logo and marks is such that Defendants' conduct is likely to cause actual confusion, mistake and deception among the consuming public.

52.     Defendants' unauthorized use of Meineke's federally registered trade name, logo and marks constitutes trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a).

53.     As a direct and proximate result of Defendants' violations of the Lanham Act, Meineke has suffered actual pecuniary losses.

54.     In addition, unless Defendants are restrained and enjoined from continuing to infringe Meineke's federally registered name, logo and marks, Defendants' unlawful conduct will seriously erode and damage Meineke's valuable goodwill, commercial reputation, name, logo and marks, and will continue to cause confusion, mistake and deception among the consuming public, including particularly those persons seeking authorized Meineke products and services, thus causing Meineke to suffer irreparable harm, for which there is no fully adequate legal remedy.

55.     Based on the foregoing, Meineke is entitled to a preliminary injunction against Defendants, restraining and enjoining them from any further use of Meineke's trade name, logo, marks, advertising, telephone listing, forms, manuals, products, computer software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

56.     More particularly, in accordance with 15 U.S.C. §§ 1116 and 1118, Meineke is entitled to a preliminary injunction directing Defendants to: (i) release or transfer to Meineke the telephone number (864) 306-9974 that has been advertised in connection with Meineke's Marks by doing everything required by the telephone company, including the signing of any

release forms or payment of any outstanding telephone bills, to release or transfer the telephone numbers to Meineke; and (ii) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo or mark confusingly similar to the Meineke name, logo, marks or trade dress, including, but not limited to the black and yellow signage that lists Meineke's services.

57.     In addition to the injunctive relief prayed for in the preceding paragraph, Meineke is entitled to a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and (b), in the amount of Defendants' profits and/or Meineke's damages, since their occupancy began at the former Meineke Center No. 1988 location.

58.     Accordingly, by reason of Defendants' acts of trademark infringement, Meineke is seeking a judgment against Defendants, pursuant to 15 U.S.C. § 1117(a) and (b), in an amount to be determined at trial, plus the costs of this action, as authorized by 15 U.S.C. § 1117(a) and (b).

59.     In addition, pursuant to 15 U.S.C. § 1117(b), given that Defendants' conduct in violation of 15 U.S.C. § 1114(1)(a) constitutes the intentional and knowing use by Defendants of one or more marks or designations, knowing that such marks or designations are counterfeit marks, Meineke is seeking a judgment trebling the amount of profits it is entitled to recover from Defendants.

60.     Based on Defendants' intentional and knowing violations of the Lanham Act, Meineke should be awarded reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM
### (Unfair Trade Practice, S.C. Code §§ 39-5-10 *et seq.*)

61.     Meineke repeats and realleges Paragraphs 1 through 60 above, which are incorporated by reference herein.

62.     Defendants' willful and knowing infringement of Meineke's Marks is an unfair trade practice under South Carolina's Unfair Trade Practices Act. *See, e.g., Global Protection Corp. v. Halbersberg*, 503 S.E.2d 483, 487 (S.C. Ct. App. 1998).

63.     Based on Defendants' unfair trade practice, Meineke is entitled to trebled damages and reasonable attorneys' fees, pursuant to S.C. Code § 39-5-140.

WHEREFORE, Meineke respectfully requests that the Court grant the following relief:

1.     Enter a preliminary injunction against Defendants in accordance with Meineke's claims against Defendants for Trademark Infringement/Unfair Competition and Unfair Trade Practices, directing Defendants, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said injunction, by personal service or otherwise, to: (i) release or transfer to Meineke the telephone number (864) 306-9974 and any telephone number that has been advertised in connection with Meineke's Marks by doing everything required by the telephone company, including the signing of any release forms or payment of any outstanding telephone bills, to release or transfer the telephone numbers to Meineke; and (ii) cease using, remove, and have removed any names, marks, signs, forms, advertisements, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo, mark or trade dress confusingly similar to the Meineke name, logo, marks or

trade dress, including, but not limited to the black and yellow signage that lists Meineke's services.

      2.     Award Meineke damages and costs as authorized by 15 U.S.C. § 1117(a) and S.C. Code § 39-5-140.

      3.     Award Meineke treble damages as authorized by 15 U.S.C. § 1117(b) and S.C. Code § 39-5-140(a).

      4.     Award Meineke reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a) and S.C. Code § 39-5-140(a).

      5     Award Meineke such other and further relief as the Court may deem just and proper.

      6.     Meineke further tenders to and respectfully prays that the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Meineke's Motion for a Preliminary Injunction.

This the 5th day of October 2015.

                **HUNTON & WILLIAMS LLP**

                /s/ Ryan G. Rich
                Ryan G. Rich, Fed. ID # 11094
                Bank of America Plaza
                101 South Tryon Street, Suite 3500
                Charlotte, North Carolina 28280
                Telephone: (704) 378-4700
                Fax: (704) 378-4890
                rrich@hunton.com

                Kevin W. Brooks, Texas Bar No. 24087214
                1445 Ross Avenue, Suite 3700
                Dallas, Texas 75202-2799
                Telephone: (214) 979-3000
                Fax: (214) 880-0011

                *Attorneys for Meineke Car Care Centers, LLC*

VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

Brian A. Romanzo, being first duly sworn, deposes and says that he is the General Counsel of Meineke Car Care Centers, LLC (hereinafter referred to as "Meineke"); that, as such, he is authorized to make this oath and verification; that, in his capacity as the General Counsel of Meineke, he is a custodian for all of the books and records of Meineke, and is familiar with those books and records; that, in his capacity as the General Counsel of Meineke, he is familiar with Meineke's business operations, including its business dealings with Robert B. Odom in particular; that he has read the foregoing Verified Complaint and Motion for Preliminary Injunction; that he knows the contents thereof to be true of his own personal knowledge, except for those allegations made in the Verified Complaint upon information and belief, and except for those allegations contained in the Verified Complaint that are verified by the Affidavits of Gerald Allen and Matt Labuda and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, he believes them to be true.

Dated this the 5th day of October 2015.

_____
Brian A. Romanzo

Sworn to (or affirmed) and subscribed to before me this day by Brian A. Romanzo.

Date: October 5, 2015

_____
Notary Public

My Commission Expires: June 22, 2019

LAURA E. SKINNER
NOTARY PUBLIC
Mecklenburg County, North Carolina
My Commission Expires June 22, 2019